AMOS-RICHIA *v.* NORTHWESTERN MUTUAL LIFE-
INSURANCE CO.

1. LIFE INSURANCE — DELIVERY OF POLICY — EVIDENCE — BURDEN
OF PROOF.

In an action on a life-insurance policy, found among the
papers of the assured after his death, accompanied by uncan-
celed revenue stamps necessary to be affixed and canceled be-
fore action could be maintained upon it in the Federal courts,
the burden of proving delivery of the policy and payment or
waiver of payment of the premium is upon the plaintiff, since
the presumption of delivery arising from possession of an in-
strument does not obtain where on the face of the instrument
some act remains to be done to make it complete.

2. INTERNAL REVENUE—STAMPS—APPLICATION TO STATE COURT.

The provision of the internal revenue law that no action can
be maintained upon an unstamped instrument is applicable
only to the Federal courts.

Error to Wayne; Donovan, J. Submitted February
2, 1906. (Docket No. 94.) Decided April 30, 1906.

Assumpsit by Lavern Amos-Richia against the North-
western Mutual Life-Insurance Company on a policy of
insurance. There was judgment for plaintiff, and de-
fendant brings error. Reversed.

*Thomas A. E. Weadock,* for appellant.

*McGrath, Nutten & Donaldson,* for appellee.

GRANT, J. For a general statement of this case we
refer to *Northwestern Mut. Life-Ins. Co.* v. *Amos,* 136
Mich. 210. We there held that a suit in equity would not
lie, as the complainant had a complete and adequate
remedy at law. After that decision the defendant there
and the plaintiff here remarried, and brought this suit on
the $2,000 policy, which resulted in a verdict and judg-

ment for her.  Any further statement of facts essential will be made in connection with the points raised.

The first question arises upon the delivery of the policy. Plaintiff's claim is based entirely upon the production of the policy.  She made no proof of payment or delivery except the fact that this policy was found among her husband's papers in the office of his employer.  The court held that the policy, being found among his papers, was prima facie evidence both of payment of the premium and delivery of the policy, and cast the onus probandi upon the defendant to prove nonpayment and nondelivery. This presents the first important question.  The policy provided:

"This policy shall not take effect until the first premium shall have been actually paid while the insured is in good health."

This policy with the other one for $3,000 was written by the company at Milwaukee, its home office, dated December 30, 1899, and mailed to its general agent in Chicago.  The law required internal revenue stamps to be affixed to the policy, and canceled; otherwise, it could not be adduced in evidence in the Federal courts, and, of course, no suit could be maintained upon it in those courts.  It is held, however, in this State that this provision of the revenue law does not apply to State courts, but only to the Federal courts.  *Clemens* v. *Conrad*, 19 Mich. 170; *Sammons* v. *Halloway*, 21 Mich. 162.  It is improbable that the plaintiff would have attempted to deliver, and that the insured would have received, a policy so incomplete that no suit could be maintained upon it in the Federal courts.  If this provision of the revenue law had been held by this court as it had by some other courts to apply to State courts, the burden of proof would clearly have remained with the party asserting the execution of the policy to show a compliance with the revenue law and a complete execution of the policy.

Inclosed with, and pinned to, the policies, in envelopes,

were stamps ready to be attached and canceled when the policies were delivered and the premiums paid. On the outside of these envelopes in large print was the following:

" Stamps inclosed $1.60 to be attached to second page of policy No. —— when put in force. The stamps must be canceled by the agent writing in ink across the face the initials of the company and the date.

" If the policy is returned to the company for any purpose before delivery, the uncanceled stamps must, of course, accompany it.

" Example of cancellation of stamp: ' N. M. L. I. Co. July 27, '98.' "

The policies, when discovered among the deceased's papers, were in the same condition as when forwarded from the office at Milwaukee; the uncanceled stamps being in the envelopes, and pinned to the policies, with the above instructions printed in large type upon the envelopes. Is it reasonable to imply under these circumstances that the agent neglected the instructions of his principal and the requirements of the law, and inadvertently executed the policies? It seems to me unreasonable.

The court excluded all evidence of the employés, agents, or officers of the defendant to show that the premiums had not been received, and the circumstances under which the policies were given into the possession of the deceased. The revenue law provides that where any instrument has not been duly stamped at the time of making or issuing the same, by reason of accident, mistake, inadvertence, or urgent necessity, and such fact is proven by oath or otherwise to the satisfaction of the collector, he may remit the penalty, attach the stamps, and cancel them.

The attorney for the plaintiff took the policies to the collector, stated that they were in the plaintiff's possession lawfully, that Mr. Amos was dead, that he represented the beneficiary, and that the stamps had been inadvertently omitted. The attorney made no explanation how he knew they had been inadvertently omitted. The

collector, relying upon the attorney's statement, affixed the stamps and canceled them. The collector did not read the instructions upon the envelopes. The court excluded all questions propounded to the collector tending to show that, if he had read the indorsements upon the envelopes, he would not have attached the stamps and canceled them. It was the duty of the company to cancel the stamps when delivered. The only authority conferred by law upon the collector to affix and cancel the stamps, at the request of either Mr. Amos or his beneficiary after death, was the production of satisfactory proof that the affixing and cancellation of the stamps were omitted by inadvertence. No claim was then made, and none is now made, that they were omitted by accident or mistake. The natural presumption is that these stamps were placed in the envelopes and pinned to the policies for attachment and cancellation when the policies were actually delivered, the premiums paid, and the policy put in force. The defendant's agent might accidentally have left the policies in Mr. Amos' office, and he may have put them in the safe for safe keeping, or they might have been left with him for examination, a thing not uncommon, or he might have acquired possession of them in other ways, and under the plaintiff's theory, and the ruling of the court, the presumption would be that the policies were delivered, that the stamps were omitted by inadvertence, and the premium paid. The bare statement of the case is sufficient to condemn its soundness. We are cited to no case decided upon similar facts.

The instrument when found was incomplete. It had no stamp affixed and canceled as the law required. There is no testimony of any mistake or inadvertence. The attorney, who presented the policy to the revenue officer, was wholly ignorant of the circumstances under which the deceased came into possession of it. It follows that the collector had no evidence to justify him in affixing the stamps, canceling them, and thus giving life to the policy, and that the burden of proof to show both delivery and

payment of the premium was upon the plaintiff. It is significant that the defendant produced such proofs of the financial transactions and circumstances of the deceased as to show almost conclusively that he had never paid the premiums. While it is undoubtedly the rule that possession of an instrument is presumptive evidence of delivery, that presumption cannot be entertained where, upon the face of the instrument, some act remains to be done to make it complete. The instrument to which this rule of presumption applies must be "in form of a complete contract." Kerr on Insurance, pp. 95, 96.

"An express provision in a policy that the company shall not be liable until the premium be actually paid, is waived by an unconditional delivery of the policy of the insured as a completed and executed contract, under an express or implied agreement that credit be given for the premium." Kerr on Insurance, § 131.

There are other errors in the case, but, as it is hardly probable that the same will occur upon a new trial, we decline to pass upon them, and reverse the case only upon the above error, without passing upon any of the other questions.

Judgment reversed, and new trial ordered.

McALVAY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.