## COLUMBIAN NAT. LIFE INS. CO. v. WIRTHLE.

No. 9078—Opinion Filed Nov. 26, 1918.

(176 Pac. 406.)

**1. Appeal and Error—Continuance—Review—Discretion of Court.**

Applications for a continuance are addressed to the sound discretion of the trial court, and, unless it is clearly apparent that the discretion has been abused, this court will not interfere and grant a new trial or reverse the cause therefor.

**2. Insurance—Life Insurance—Recovery—Sufficiency of Evidence.**

The record in this case examined, and it is held, that the judgment of the trial court is not reasonably sustained by the weight of the evidence.

**3. Insurance—Policy Provisions—Delivery Presumptions.**

The presumption of the delivery of an insurance policy arising from possession thereof does not arise where, on the face of the policy itself, some act remains to be done to make it complete, and the possession of a policy of insurance containing a clause "in further consideration of the sum of $——— to be paid in advance" is not evidence of the payment of the premium.

**4. Evidence — Lithographic Receipt — Authentication.**

A lithographic receipt, which contains a provision upon the face thereof that in order for the same to be valid it must be countersigned by an authorized agent of the com-

pany, is not receivable in evidence until due and valid execution thereof or its genuineness and authenticity has been established; the said receipt not being countersigned as provided.

5. Evidence—Presumption on Presumption.

Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the very facts in issue, for one presumption cannot be based upon another presumption.

(Syllabus by Hooker, C.)

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Suit by Lina May Wirthle against the Columbian National Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for a new trial.

Keaton, Wells & Johnston, Abernathy & Howell, and Frederick H. Nash, for plaintiff in error.

W. L. Chapman and Joe M. Adams, for defendants in error.

Opinion by HOOKER, C. The defendant in error instituted suit in the lower court against the company to recover upon an insurance policy alleged to have been executed and delivered by it on the 29th day of August, 1912 by the terms of which, in consideration of the annual payment of $44.52 made to it, insurance was had upon the life of one Ernest W. Wirthle in the sum of $2,-000, payable to the defendant in error as the sole beneficiary.

The answer of the company consisted, first, of a general denial, second, the company admitted the execution by it of a policy of insurance in the form alleged in the plaintiff's petition, but it alleged that said policy was in fact executed on May 29, 1912, and that at about the time of its execution the said Ernest W. Wirthle, the insured, represented that he wished the annual premiums of said insurance to become due in August of each year, and that for this purpose said policy was dated August 29, 1912, and that said insured paid the sum of $4.20 as premium and no more, and by agreement between it and the insured there was attached to said policy what is known as a "rider" in words and figures, to wit:

"Interim Insurance on Policy No. 29676.

"In consideration of the additional interim premium of $4.20 provided it is paid while the insured is in sound health, the insurance under this policy, subject to all its conditions and provisions relation to the payment of a death claim shall be in force until the 29 day of August, 1912.

"Said interim premium is for such temporary insurance alone, represents the cost of such insurance by the American Experience Table of Mortality (plus not exceeding 12 per cent. loading), is not to be considered a part of any regular premium and adds nothing to any of the guaranteed values. In case the regular premium called for on the first page herein is not paid by the above-named date, this policy and all insurance hereunder shall immediately cease.

"Dated at Boston, Mass., this 29 day of May 1912."

"That by the terms of such rider it was expressly agreed and provided that in case the regular premium called for on the first page here is not paid by the above-named date, this policy and all insurance hereunder shall immediately cease. Defendant alleges that such regular premium called for on the first page of such policy and being the premium of $44.52 due August 29, 1912, was not paid by said insured, or any one for him, or before the date it matured, to wit, August 29, 1912, or at any other time, and that, by the terms of the contract between insured and this defendant and by reason of the failure of such insured to make payment of such annual premium at the time it became due, such policy lapsed and all liability thereunder ceased."

To this answer a reply was filed consisting of a general denial.

On the 13th day of October, 1916, a trial was commenced in this action, and the plaintiff below testified in her own behalf to the death of her son, the insured, and that she was the beneficiary named in the policy; that the policy had been for some time prior to the death of the insured in her possession, having been given to her by the insured together with certain other private papers, and in the envelope with the policy were two lithographed receipts, upon policy No. 29676, the one for the sum of $4.20 in words and figures as follows:

"Premium Receipt.
"The Columbian National Life Insurance Co.
"Chartered in Massachusetts.
"Home Office, Boston, Mass.

"The premium due as set forth below has been settled this day. This receipt to be valid must be countersigned by an authorized agent of the company.

"Countersigned —— 191—. by
"Wm. H. Brown, Secretary and Treasurer.

| Policy Number. | Due Date | Premium Payable. | Amount |
|---|---|---|---|
| 29676 | May 29, 1912 | Term | $4.20 |

"Earnest W. Wirthle, Shawnee, Oklahoma.
"Exhibit B. Form 767."

All of this receipt appearing above the

number and the date of the policy was in printing, save and except the signature of the secretary and treasurer, which was lithographed. And the other receipt was in the same language, save and except the amount of the premium and the substitution of the word "Ann." for the word "Term." as appeared in the receipt above given.

The beneficiary had no personal knowledge of the execution and of the delivery of these receipts, nor as to the payment of the premiums evidenced thereby. The policy introduced by her, which constituted the basis of the action, provided upon the face thereof that the Columbian National Life Insurance Company of Boston, Mass., in consideration of the application, copy of which is hereto attached, and which together with this policy constitutes the entire contract, and the payment of the annual premium of $44.52 on the 29th of August in every year until 20 full years' premium shall have been paid, or until the prior death of the insured, Ernest W. Wirthle, of Shawnee, Okla., should pay the sum insured, $2,000, to the beneficiary, Lina May Wirthle, mother of the insured, with right of revocation. If there be no beneficiary at the death of the insured, the proceeds thereof shall be payable to his executor, administrator, or assigns.

The policy further provided that the same should be incontestable after one year from its date of issue except for nonpayment of premium, subject, however, in case of mistake of age to the adjustment of the insurance proportionate to the premium at the true age, and the same was dated the 29th day of August, 1912. Attached to the policy was the rider providing for the interim insurance as set forth in the answer of the company filed in this action heretofore given.

The plaintiff further testified that she had made the proof of death and demanded payment of the amount due under said policy, but that payment had been refused, and this suit was instituted to recover thereon.

A demurrer was filed to this evidence by the company and overruled, and thereupon the company introduced the testimony of Wm. H. Brown, its secretary and treasurer, and who had been such from 1905 up to the date of the trial. He testified that he had the records of all policies issued by the company and applications therefor, all applications for reinstatements, policy changes, and all correspondence with the policy holders, as well as the books of accounts, and that he also had the custody and supervision of receiving and disbursing the funds of the company, and that the company had on May 29, 1912, issued the policy introduced in evidence in this case in accordance with the application made to it by the insured, by the terms of which an interim insurance was made upon the life of the insured from May 29, 1912, to August 29, 1912, and that at the instance of the insured said policy was dated as of date August 29, 1912, when as a matter of fact it had been executed on May 29, 1912, and the rider attached thereto; that all payment which the insured made was $4.20 for the interim insurance which had been duly credited to him upon the books of the company; that the annual premium stipulated for in the policy had not been paid to him or any one else so far as he knew by the insured, nor any request for reinstatement made; and that, according to his records, the policy lapsed August 29, 1912, for nonpayment of premiums.

Thereupon one Henry Sharp, the local agent of the company at Shawnee, Okla., to whom the original application for insurance was given by the insured and who represented the company in that locality and to whom the policy had been sent by the company for delivery to the insured and the one by whom said policy was delivered: He testified that the premium for the insurance from May 29 to August 29, 1912, had been paid to him by the insured, and that he had executed to the insured his individual receipt therefor; that he did not have a receipt such as was used by the company to deliver to the insured, and that when the annual premium became due August 29, 1912, he called the attention of the insured thereto and requested the payment thereof; that the insured said he was unable to pay the same and that he did not care if the policy lapsed for the nonpayment of the premium; that the premium was not paid by the insured to him, nor to any one else so far as he knew: that he never saw either of the receipts introduced in evidence which were in the possession of the insured at the time of his death, but that he had delivered the policy when the same was sent to him by the company to the insured some time prior to the maturity of the first annual payment; that the application for insurance was made in May, and at the request of the insured the policy was dated so that the annual premiums would mature in August of each year.

At the conclusion of this testimony, the company asked that the cause be continued for a few days in order that it could procure some additional evidence to rebut the idea of payment that might arise by virtue of the receipt for the annual premiums upon said policy, and the cause was continued from October 13 to October 19, 1916, upon which date the company then again filed an appli-

cation for a continuance, which application for a continuance was overruled by the court and it is asserted that the trial court committed an error in overruling said application. Applications for continuance are addressed to the sound discretion of the trial court, and, unless it is clearly apparent that that discretion has been abused, this court will not interfere and grant a new trial or reverse a cause therefor.

The contents of this affidavit, in our judgment, is not sufficient to have authorized the court to grant the application sought. The same does not contain any statement of any material evidence which the company could have introduced, but was speculative in its nature, and but for the expression of a hope that it might procure some testimony the nature of which it was not advised, and then the question of diligence might have controlled the trial court, for the witness had ample time to have traveled from Boston, Mass., to Shawnee between the date of the former trial, October 13th and October 19th. Considering these facts, and the further fact that this case was postponed to January 8, 1916, for argument and no effort was then made to introduce any evidence procu:ed by the company from the source set forth in the affidavit for a continuance filed in this cause on October 19th, justifies us in saying that the trial court did not abuse its discretion in refusing a continuance.

This cause was continued from October 19, 1916, to January 8, 1917, for oral argument, and on which date an application was made by the company to reopen the case and introduce the testimony of W. F. Malone, state agent of the company residing at Oklahoma City for certain purposes. This application was refused by the court, and it is urged by the company that the court committed an error. This matter was largely in the discretion of the trial court, and it would seem from the record before us that discretion was not abused. The attorney for the company and the state agent whose testimony was sought to be introduced resided in the same city, and the testimony of this general agent was at all times accesible to the company, and no effort was made until the 8th day of January, when it was assigned for oral argument, to procure his testimony, although the necessity therefor was clearly apparent to the company on the 13th of October, the first day of the trial. The trial court then rendered judgment in favor of the plaintiff below and against the company for the full amount of the policy. Motion for a new trial was filed, and the company has appealed here for a reversal for the following reasons:

(1) Because the evidence conclusively shows that the annual premium of August 29, 1912, had never been paid.

(2) That the policy itself provides that if the payment has not been made the same lapsed.

(3) That the possession of the policy according to its terms is not prima facie evidence of payment; nor is the possession of the receipt, the same not being countersigned, as required, prima facie evidence of payment.

The application for the policy here clearly indicates that a three months' term rate from date was demanded by the insured. The rider attached to the policy, by means of which the interim insurance was had, clearly provides that the regular annual premium was to be paid in the future, and, if not paid, that the policy and all insurance thereunder shall cease. The face of the policy does not contain a receipt for the first year's premium, but a mere recitation that, in consideration of payment on the 19th day of August in every year until full 20 years' premium shall have been paid, or until the prior death of the insured, does covenant and agree that it would pay the insured the sum of $2,000. Therefore it may be safely said that the possession of the policy is not prima facie evidence of the payment of the first annual premium due August 29, 1912.

The rule is stated in 14 R. C. L. 968, that:

"The delivery of an insurance policy to the insured, and its possession by him, are prima facie evidence of the payment of the cash consideration recited therein, except where the policy does not contain a receipt for payment and indicates that a separate receipt is to evidence the payment."

In the case of Dircks v. German Ins. Co., 34 Mo. App. 31, it is held:

"The recital in a policy of fire insurance that the company, 'in consideration of the amount of the premium does not insure,' etc., is not an acknowledgment of the receipt of the premium and does not estop the company from showing any payment."

And in Amos v. Northwestern Ins. Co., 143 Mich. 684, 107 N. W. 707, it is said:

"The presumption of the delivery of an instrument arising from possession thereof does not arise where, on the face of the instrument, some act .remains to be done to make it complete."

In Quinby v. N. Y. Life Ins. Co., 24 N. Y. Supp. 593, paragraph 1 of the syllabus (71 Hun, 104) is thus stated:

"The possession of a policy of insurance containing a clause, 'in further consideration

of the sum of $67.50 to be paid in advance,' is not evidence of the payment of the first premium."

See, also, Tomsecek v. Trav. Ins. Co., 113 Wis. 114, 88 N. W. 1913, 57 L. R. A. 455, 9J Am. St. Rep. 846; Manhattan Life Ins. Co. v. Meyers, 109 Ky. 372, 59 S. W. 30; 2 Beach on Insurance, § 1335.

It is asserted by the plaintiff in error that, in view of the fact that the receipts in question on the face thereof contain this provision, "This receipt to be valid must be countersigned by an authorized agent of the company," the introduction thereof, in the absence of some proof showing their authenticity of their execution and delivery, was improper. In support thereof the following authorities are relied upon:

17 Cyc. 425, where it is stated:

"The general rule on the subject of proving private writings is that before they are receivable in evidence their due and valid execution or their genuineness and authenticity must be established. This rule has repeatedly been applied, not only to deeds, but also to various other private writings."

In Bell v. W. & A. R. Co., 125 Ga. 510, 54 S. E. 532, it is held:

"A freight receipt to which the name of a railway agent appears to have been signed by stencil is not admissible in evidence, without accompanying proof to show that he issued the receipt, or that its genuineness has been recognized by his principal."

And in Ruckman v. R. C. Stone Milling Co., 139 Mo. App. 256, 123 S. W. 69, it is held:

"In an action against a milling company for a breach of contract of employment, proof that the person signing it for defendant had authority to do so was not alone sufficient to admit it in evidence, but plaintiff should have also shown that such person did sign it, and, not having done so, it was properly excluded."

In Chastang v. Chastang, 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45, the Supreme Court of Alabama said:

"The law is unquestionably, in regard to receipts generally, that they shall be proved, like all other papers introduced in evidence; and, unless there is some statutory provision making the receipt of the tax collector self-proving, we hold that, if it is an ancient document, it may be received under the usual requirements in such cases, and, if it is not, it must be proved just as any other receipt would."

In 10 R. C. L. 1094, it is stated:

"As a preliminary to the introduction of private writings in evidence, their execution must be proved and their authenticity established. A writing of itself is not evidence; it must be accompanied by proof of some sort. So a paper purporting to be a request to a railroad company for cars does not prove itself, and is not admissible in evidence without identification or proof that it is what it purports to be."

It must be borne in mind in this case that these receipts were printed and bore the lithograph signature of the secretary and treasurer, but were not countersigned as required by the face thereof. No effort was made to show the authenticity thereof, nor that they had been executed and delivered by any one having authority. In our judgment, in the absence thereof, these receipts were improperly submitted in evidence.

The general rule is that receipts are prima facie evidence, but not conclusive evidence, of the payment of the money indicated therein. They are always open to explanation, and a party who is purported to have executed the same may show that the allegations thereof are untrue, or that the same was executed and delivered by mistake or fraud.

As we view this record, it was incumbent upon the plaintiff below to prove the payment of the annual premium which matured August 29, 1912. This policy was delivered to the insured prior thereto, and by its very terms it is stipulated that, in order for it to be kept alive and in full force, the annual payment must be made. It was incumbent upon her, having instituted this action, to establish that such payment was made by the insured on or before August 29, 1912. The allegations of the petition are that the conditions of the policy had been complied with, and it was expressly denied by the company that the payment had been made. As we view it, the evidence does not support the finding of the trial court that such payment had been made, but, upon the contrary, the judgment of the court is not reasonably supported by the evidence.

In Am. Life Ins. Co. v. Green, 57 Ga. 469, the court said:

"Where the policy provided that no receipt for premiums after the first should be valid without the seal of the company, a receipt from the agent without such seal was inadmissible in evidence to bind the company; but the payment of the premium could be proved aliunde."

See, also, Ormond v. F. Life Ass'n, 96 N. C. 158, 1 S. E. 796.

The trial court evidently presumed the possession of the policy was some evidence of payment. The language of the policy nega-

tives such a fact, and all the evidence demonstrates that theory not to be true. An unsigned incomplete receipt is not any evidence of payment. No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest. must, it is said, be established by direct evidence as if they were the very facts in issue; one presumption cannot be based upon another presumption. 16 Cyc. 1050; 17 Cyc. 754; M., K. & T. R. Co. v. Box, 48 Okla. 402, 150 Pac. 111; St. L. & S. F. R. Co. v. M. Laundry, 42 Okla. 501, 141 Pac. 970; K. C. Southern R. Co. v. Henderson, 54 Okla. 320, 153 Pac. 872.

The judgment of the lower court must be reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.