### SECREST et al. v. NOBLES et al.

No. 14875—Opinion Filed Feb. 19, 1924.

1. **Witnesses—Testimony of Transactions with Persons Since Deceased—Waiver of Incompetency.**

The incompetency of a witness to testify concerning transactions or communications had with a person since deceased is waived by the objecting party eliciting on cross-examination testimony relating to such transactions or communications, or by showing on cross-examination that such transactions or communications occurred, or by calling that witness, and showing on direct examination that such transaction or communication occurred.

2. **Trusts—Deed as Title in Trust—Evidence.**

The deed showing title will not be decreed to be a title in trust unless the parol evidence thereof be clear, satisfactory, and convincing.

3. **Same—Resulting Trust—Sufficiency of Parol Evidence.**

A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor the evidence must be clear, unequivocal, and decisive.

4. **Same.**

The evidence in this case examined, and held, not sufficiently satisfactory to establish a resulting trust.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Wagoner County; Enloe V. Vernor, Judge.

Action by James Secrest and William E. Long against James Nobles, B. Mobbs and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

E. J. Broaddus and Watts & Watts, for plaintiffs in error.

John C. Graves, for defendants in error.

Opinion by JONES, C. This is an action in ejectment to recover certain lands in Wagoner county, Okla., instituted in the district court of said county by James E. Secrest and William E. Long, plaintiffs, appellants herein, against James Nobles et al. The plaintiff Secrest deraigned his title and relied on the deed from his coplaintiff, William E. Long. The answering defendant, B. Mobbs, who appears and adopted an answer and cross-petition of his brother, F. J. Mobbs, who was acting for the said B. Mobbs under power of attorney, relies on a deed from one G. D. Sleeper. A number of the defendants file disclaimer and the others make default. Long and Sleeper were copartners engaged in the real estate business and at one time owned the land in controversy. The deeds conveying same were made to them in their individual names, and they, by separate conveyances, joined by their wives, conveyed the land to Harry Blake. Afterwards Blake traded for a 180 acre tract of land in Cherokee county belonging to Sleeper and Long, giving as consideration a warranty deed to Long covering the land in controversy and also a note for $500, and interest notes made payable to Sleeper and Long and secured by a mortgage on the 180 acres of land, in Cherokee county. A little more than a year thereafter Sleeper obtained a quitclaim deed to the land in controversy from Blake, which land, as heretofore stated, at the time of the transaction was deeded to Long, and thereafter Sleeper conveyed the land to F. J. Mobbs. On July 23, 1919, Long deeded the land in controversy to the plaintiff Secrest. The contention of plaintiffs is that the consideration of the deed to Long in his individual name, was for his individual interest, being an undivided one-half interest, in the 180 acre tract of land in Cherokee county, and that neither the partnership composed of Sleeper and Long nor Sleeper had any interest in the land conveyed thereby, which is the land in controversy, and that the consideration for the notes and mortgage represents the individual interest. or undivided one-half interest of Sleeper in the Cherokee county land, and that neither the partnership of Sleeper and Long nor Long had any interest in said notes and mortgage.

The matter was submitted to the court without the intervention of a jury and the court found that the plaintiff Secrest was the owner and entitled to an undivided one-half interest in said land, and that J. F Mobbs was the owner and entitled to a one half undivided interest in said land.

Numerous deeds are offered in evidence showing the chain of title as deraigned both by plaintiffs and defendants, but the only controversy, as we understand the record, arises out of the transaction wherein Long and Sleeper conveyed the 180 tract of land in Cherokee county to Blake in exchange for the land in controversy and $500 as evidenced by notes and mortgage. The evidence also discloses that Blake, at the time of this transaction, was paid a small amount in cash by Sleeper. The witness had forgotten the exact amount, but estimated it at from $25 to $75, and also the effect and purpose of the quitclaim deed from Blake to Sleeper, which, so far as the record discloses, was made without consideration, must be determined.

The deed from Harry Blake and his wife to William E. Long was executed on the 31st day of January, 1913, and the conveyance by William E. Long and wife to plaintiff James F. Secrest was on July 23, 1919. The deed upon which the appellants rely was the quitclaim deed from Blake to Sleeper, dated February 12, 1914, more than one year after the transaction was had in which the land was exchanged. The record also discloses a deed of September 5, 1919, from Blake to the plaintiff Secrest, which was evidently a correction deed to which no special importance is attached. The contention of the defendants is that the transaction heretofore referred to was purely a partnership transaction, that the 180 acres of land in Cherokee county was the property of the partnership composed of Long and Sleeper and that the partner, Long, held the land conveyed to him by Blake, the land here in controversy, in trust for the benefit of the partnership. The appellants set forth the following specifications of error upon which they rely for reversal in this case:

"(1)  That the decisions and judgment of said district court is contrary to law.

"(2)  That the judgment of the said district court is not sustained by the evidence.

"(3)  That said district court erred in rejecting competent, relevant, and material evidence on the part of the plaintiffs in error, to which the said plaintiffs in error at the time duly excepted."

And the first proposition presented is that the judgment of the court is not sustained by the evidence and is contrary to the law. The theory of the defense being that the plaintiff Secrest is the trustee of a resulting trust, that Long held the legal title to the land which was the partnership property of Sleeper and Long. That the plaintiff Secrest possessed a legal title which Long owned, and the defendant Mobbs the equitable title which Sleeper owned, as a partner of Long's, and appellants urge that, there being no express written or oral agreement evidencing this fact, the burden is upon the defendants to establish same, and that the evidence should be clear and convincing.

Appellants cite R. C. L. vol. 20, p. 854, sec. 61. which announces the general rule governing such matters:

"There is some uncertainty as to what must be shown in order that real property may be considered a portion of the firm assets. The rule which has the support of the best authority, and which rests on sound principles, is the one which makes the intention of the parties at the time of making the conveyance the proper test. In other words the question is one to be determined from the intention of the parties, or as it is sometimes said, from the agreement of the parties. In all cases the presumption is against the inclusion of the real estate and in order that it may be treated as belonging to the partnership the intention must be clearly manifested. There is also a presumption that the ownership of real estate is where the muniment of title places it. If by all the circumstances attending the transaction, it is made to appear that, in the intention of the parties, it was purchased for and was treated as partnership property, the presumption of ownership arising from the fact of the deed will be overcome, and the property will be treated as belonging to the partnership. * * * It may be added that in general the theory of trusts underlies the whole subject of partnership real estate, each partner being considered a trustee for the others to the extent of his proportionate interest in the firm."

Also, 30 Cyc., page 432 under "Partnership," we find the following statement:

"In determining whether particular real estate is firm property, or belonging to the partners as individuals, the courts seek to give effect to the intent of the partners, unless such a result would work a fraud upon third persons. The intent may be disclosed either by their conduct, or by their agreements either express or implied. As a rule courts are not inclined to imply a partnership where the subject-matter is real estate alone, nor to treat real estate as a part of the partnership property unless it is clear from the agreement of the parties that they intend it shall be so treated."

As heretofore stated the evidence discloses that the land in controversy was deeded directly to Long by Blake, and notes given, secured by mortgage, were made to Long and Sleeper, and from the testimony of the

witness Cobb it would seem that the note and mortgages were assigned to him by Sleeper, and that the consideration for same was paid to Sleeper for his individual benefit and not to Long. The only facts, as we gather from the record, tending to show that the land was held in trust by Long for the partnership of Long and Sleeper is the mere fact that the partnership existed between these parties, and the land given in exchange for the land in controversy and $500 notes secured by mortgage on the Cherokee county land was probably partnership property, but the evidence is in no wise onclusive of this fact.

It is true that more than one year after the transaction Blake executed a quitclaim deed to Sleeper, but it is evident that there was no consideration for same, and it seems to have been given as a correction deed for the purpose of correcting some error in the deed formerly executed by Blake to Long, and we do not understand that the appellees seriously contend that they have any rights by reason of this deed, and the real issue is that of whether or not there was a resulting trust. Appellants, in support of their contention that the evidence is insufficient to create a resulting trust, cite the case of Columbian Nat. Life Ins. Co. v. Wirthle, 71 Oklahoma, 176 Pac. 406, wherein this court said:

"No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference rest must, it is said, be established by direct evidence as if they were the very facts in issue; one presumption cannot be based upon another presumption."

And further cite the case of Bernard v. McRay, 89 Okla. 1, 213 Pac. 82, wherein the court said:

"A deed showing title will not be decreed to be a title in trust, unless the parol evidence thereof be clear, satisfactory, and convincing."

And in the case of Miller v. Nanny, 91 Okla. 150, 216 Pac. 662:

"A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satsisfactory kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor the evidence must be clear, unequivocal and decisive."

And in R. C. L. volume 26, sec. 77, p. 1231, we find the following rule announced:

"Where the conveyance is taken to one, and there is no declaration in writing that the purchase was made in trust for another, and the trust is denied by him who is charged as trustee, it was formally held that no evidence aliunde was admissible to show that the purchase was made with trust money whereby to raise a trust in favor of the cestui que trust. And though modern decisions have, in some measure, mitigated the rigor of this rule and permitted parole evidence to establish the trust, yet such evidence must be very clear, satisfactory, and convincing. Other courts have held that parol evidence to establish a resulting trust must be clear, strong, and unequivocal and must establish the fact of the payment of the purchase money, by the alleged beneficiary beyond doubt. Again, it is said that there must be the clear and indisputable proof that the purchase was made for the party claiming such trust, and the purchase money paid by him. Where the evidence is doubtful and not clear and satisfactory, or is capable of reasonable explanation on any theory other than that of the evidence of an implied or resulting trust such trust will not be held sufficiently established to entitle the beneficiary to a decree declaring and enforcing it."

The second proposition urged by appellants is that the court erred in refusing to permit competent, relevant, and material evidence, offered on the part of the plaintiffs, to which the plaintiffs at the time duly excepted, wherein the plaintiffs offered to prove by the witness Long that the land in controversy was conveyed to him for his interest in land in Cherokee county, and made tender of such evidence, but upon objection on the part of defendants the court refused to admit the introduction of the evidence offered by the plaintiffs on the part of the witness Long, on the theory that plaintiffs were attempting to offer evidence of transaction had between partners, Long and Sleeper, Sleeper having died prior to the trial, and made the contention that Long was an incompetent witness under section 5049, Rev. Laws, 1910, which is as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; nor shall such party or assignor be competent to testify to any

transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor when such surviving partner or joint contractor is an adverse party. If the testimony of a party to the action or proceeding has been taken, and he afterwards die, and the testimony so taken shall be used after his death, in behalf of executors, administrators, heirs at law, next of kin, assignees, surviving partner, or joint contractor, the other party, or the assignor, shall be competent to testify as to any and all matters to which the tesimony so taken relates."

The transaction inquired about, if determined on the theory, and from the view point of the appellants, would be a transaction between the witness, Long, and the grantee in said deed, Blake, and does not necessarily fall within the purview of the statutes, and furthermore the record discloses that the witness Long was called as a witness on the part of the appellees, defendants below, and was interrogated as to his connection with the firm of Sleeper and Long, and the character of the partnership business in which they were engaged, and asked particularly as to their connection during the years of 1912, 1913, and 1914, covering the period of time in which this tranaction took place, and among other questions was asked:

"Were you engaged in the land business as partners at the time of this transaction when these deeds you have read were made?"

—to which the witness answered, "Yes, sir".

The transaction and the deeds inquired about by the defendants was the transaction wherein Long and Sleeper conveyed the Cherokee county land to Blake and Blake in return conveyed the land in controversy direct to Long and executed his notes for $500 and mortgage to secure same to Sleeper and Long, and the witness was asked the specific question as to whether or not they were engaged in the land business as partners at this particular time, to which he answered "Yes," and not being permitted to make explanation of the transaction it would be inferred, or at least might be inferred, that this transaction about which this controversy arose was a partnership transaction, and we think it unfair to the witness, and prejudicial to the appellants' interest not to permit the appellants to cross-examine the witness, or call him as a witness in further explanation of the facts developed by the defendants. Appellants cite the case of Conwell v. Eldridge et al., 71 Oklahoma, 177 Pac. 79, wherein this court an-

nounces the rule, in the third paragraph of the syllabus of said opinion, to be as follows:

"The incompetency of a witness to testify concering transactions or communications had with a person since deceased, is waived by the objecting party, eliciting on cross-examination testimony relating to such transactions or communications, or by showing on cross-examination that such transactions or communications occurred."

This we think a just rule and clearly applicable to the situation in this case, and in view of the fact that the evidence on the part of the defendants offered to establish their contention not being of a satisfactory nature, not clear, conclusive, and convincing as it should be to establish the character of defense relied upon; and in view of the further fact that the evidence of the witness Long was excluded by the court, in explanation of the transaction had with the grantee, Blake, and in further explanation of the transaction inquired about by the defendant with the deceased, Sleeper, we think constitutes reversible error and was prejudicial to the rights of appellants. Appellants insist that the judgment should not only be reversed, but judgment should be rendered by this court quieting title to the entire tract in the plaintiff Secrest, but, in view of the existing condition of the record, we think it the better practice to reverse the case for a new trial, and so recommend.

By the Court: It is so ordered.