**KUBATZKY et al. v. PITTSBURGH PLATE GLASS CO.**

No. 16958—Opinion Filed Sept. 21, 1926.

1. **Mechanics' Liens—Action to Foreclose Materialman's Lien—Burden of Proof as to Delivery and Use of Material on Land.**

Where P. sells building material to K., and afterwards P. files his action against K. and T. for the value of such material and to declare a lien upon the lands of T., the burden of proof is upon P. to establish the fact that the material was delivered to and used in the construction of the building on the lands of T.

2. **Same—Payment—Application of Payment by Owner to Materialman Regardless of Contractor's Directions.**

Where P., with knowledge of the fact that K. is erecting two buildings, one on lands owned by K. and one on lands owned by T., and T. delivers to P. its check, made

direct to P. as payee, for a sum sufficient to pay all claims for materials furnished by P. for the erection of a building on T.'s lands, P. is required to credit the sum of said check against the charges on T.'s lands irrespective of any direction as to the application of such sum by the contractor.

### 3. Accord and Satisfaction—Unliquidated Claims—Acceptance of Less than Claimed.

Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed in satisfaction operates as an accord and satisfaction, as the rule that receipt of a part of the debt due, under an agreement that it shall be in full satisfaction, is not a bar to any action to recover the balance, does not apply where the plaintiff's claim is disputed or unliquidated, and the fact that the creditor was not bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to recover, does not in any way affect the rule.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Pittsburgh Plate Glass Company against O. Kubatzky, as contractor, and Tulsa Realty Investment Company, as owner, to establish and foreclose a materialman's lien on certain lands. Judgment for plaintiff, and defendants appeal. Reversed, with directions.

C. R. Thurlwell, for plaintiffs in error.

Yancy & Fist and W. Y. Mauzy, for defendant in error.

Opinion by RUTH, C. Pittsburgh Plate Glass Company brought its action against the defendants O. Kubatzky and the Tulsa Realty Investment Company, wherein it prayed judgment against O. Kubatzky in the sum of $248.60 for certain materials, to wit: Plate glass furnished to the said O. Kubatzky, to be used in the construction of a certain building for the defendant Tulsa Realty Investment Company, on lot 3, block 1, Broadmoor Heights addition to the city of Tulsa. Alleging, further, that the said lot was the property of the Tulsa Realty Investment Company, and they prayed that they have judgment declaring the sum sued for to be a lien upon the said lot and block, and praying that the said lien be foreclosed. To this petition the defendant O. Kubatzky filed his answer by way of general denial, and, further answering. denies the correctness of the plaintiff's account, and alleges that he has paid the plaintiff in full for all materials furnished, and in his cross-petition, Kubatzky prays attorneys' fees for defending the action.

The Tulsa Realty Investment Company, for answer, denies generally the allegation of the plaintiff's petition, and alleges that the account sued on has been paid in full, and for cross-petition prays attorney's fees. The cause was tried to the court without the intervention of a jury, and upon the conclusion of the plaintiff's testimony, the defendants filed their demurrer to the evidence and moved for judgment, which demurrer was by the court overruled, and the defendants excepted. At the conclusion of all the testimony the court rendered judgment in favor of the plaintiff, and against the defendant O. Kubatzky, in the sum of $248.60, with interest from the 7th day of March, 1923, at the rate of 10 per cent. per annum, and further rendered judgment for the plaintiff, declaring the sum of $205 a lien upon lot 3 and block 1, Broadmoor Heights, and that the Tulsa Realty Investment Company was the owner of lot 3 in block 1, and that Kubatzky was erecting a building on lots 1 and 2 for his wife at the same time he was erecting a building on lot 3 for his codefendant in this action.

It appears that on October 25, 1922, the agent of the plaintiff was requested by O. Kubatzky to submit an estimate for furnishing plate glass of certain dimensions, and the plaintiff's evidence shows that they did furnish glass of certain dimensions to Kubatzky, but that they did not furnish all the glass used in the Kubatzky building or the building being erected for the Tulsa Realty Investment Company, and could not identify any of the glass used on the building in block 1 and lot 3 as being the glass furnished by them, and in fact they never delivered any glass to these buildings, but it would appear the glass was delivered to Kubatzky at the freight office, or express office, and the plaintiff's testimony further shows that Kubatzky did use glass in the building of different dimensions from that for which the plaintiff submitted an estimate, some of the glass so used by Kubatzky being of lesser dimensions than that ordered, and some of it being larger than any furnished by the plaintiff.

The plaintiff does not testify that any of the glass furnished by them was actually used in the building being erected on lot 3 and block 1, but one witness for the plaintiff testifies that he saw the boxes in which the glass was shipped, in the building on

lot 3, block 1, but the boxes were empty at the time, and he didn't know what became of the glass, and did not know whether the glass was used in the building being erected on lots 1 and 2, or in the building being erected on lot 3, and in its exhibits they set forth numerous items consisting of glass and charges made to "O. Kubatzky, Tulsa, Okla.," and in these exhibits appear charges for setting plate glass at "15th and Peoria," of $42, and $3, and for glazing glass "next to 15th and Peoria" charges of $42, and $3, and in no place in their exhibits do they show that they have furnished any glass for any building "next to 15th and Peoria," and it is shown by the testimony that 15th and Peoria was the point at which Kubatzky was erecting the building for his wife, and "next to 15th and Peoria" was lot 3 on which they claimed this lien.

It further appears that between March 24 and 30, 1923, plaintiff's agent and Kubatzky met at the latter's office, and went over all accounts between plaintiff and Kubatzky, and reached a final and complete settlement, and it is admitted by the plaintiff that $563 would pay for all labor and material furnished by plaintiff for lot 3, block 1, and thereupon Kubatzky either delivered to, or caused to be forwarded to, plaintiff a check of the Tulsa Realty Investment Company, in the sum of $567, and this check was made direct to Pittsburgh Plate Glass Company, and bore the notation:

"Oct. 25, 1922, Invoice to O. Kubatzky $567. This check is in full settlement of account as shown herein. Acceptance by indorsement constitutes receipt in full."

Plaintiff's contention is it did not know the Tulsa Realty Investment Company was the owner of lot 3, block 1, and as Kubatzky did not give specific directions as to the application of the check, plaintiff applied it to the general account of Kubatzky. If plaintiff was selling material to Kubatzky on open account, to be used wherever Kubatzky desired to use it, and plaintiff could not prove it was used on the particular land, its lien could not attach.

The law does not contemplate that material dealers may sell to contractors promiscuously, and then establish a lien for that particular material upon any building the contractor may be erecting. As well it might be contended that a mill company might ship carloads of lumber to a local lumber yard, and then enforce a lien upon all buildings to which the local yard might have furnished lumber.

The lien law was enacted for the protection of those furnishing labor and materials entering into the construction of buildings, and it is the duty of the materialman to know where his material is being used, and to ascertain the name of the owner, if he desires to retain a lien on the property, or to use reasonable diligence in ascertaining upon whose land the material is to be used, and his failure so to do constitutes such negligence as will preclude the seller from maintaining a lien upon any building he may elect, that might be under construction by the contractor to whom the material was delivered.

While the general impression is that the materialman's lien law was enacted exclusively for the benefit of the dealer in materials, nevertheless, the owner has rights thereunder which cannot be ignored. These rights may be exercised by the owner refusing to make a full settlement with the contractor before the expiration of the lien period, or, by requiring the contractor to furnish a "release of liens," duly executed by all parties furnishing labor and material, or by paying the sums due direct to claimants where the amount of the claim is not in dispute.

While the plaintiff's Tulsa "resident agent" testifies he did not know the Tulsa Realty Investment Company owned the building, yet the fact that in plaintiff's "Exhibit 1" material (glass) of the value of $248.60 is charged to the building "owned by Mr. Kubatzky" at 15th and Peoria, and "Exhibit 6" of plaintiff is for material (glass) for the building of Abbott & Welch at 15th and Peoria, consigned to O. Kubatzky, and other exhibits of plaintiff showing material consigned Kubatzky at "15th and Peoria," and in other instances charged to Kubatzky on the building "next to 15th and Peoria," is conclusive proof that plaintiff knew Kubatzky was erecting two separate buildings on block 1, Broadmoor Heights.

The check received by plaintiff was drawn in favor of the Pittsburgh Plate Glass Company, this plaintiff, and was signed by the Tulsa Realty Investment Company, by Forrest C. Welch, Sec., and the record showing Abbott & Welch to be, for all practical purposes, the Tulsa Realty Investment Company, and the check bearing the notation "Invoice to O. Kubatzky Oct. 25, 1922," this being the exact date of the submission of the estimate to Kubatzky by the plain-

tiff for this particular material, and the face of the check calling for a sum sufficient to cover the cost of all labor performed and material furnished Kubatzky by the plaintiff for the building being erected on lot 3, block 1, upon which the lien is claimed, was sufficient notice to the plaintiff to warrant it, indeed, to require it, to apply the proceeds of the check to payment of all claims against the lands of the drawer of the check.

In Harris v. Gilbert (R. I.) 128 Atl. 11, it is said:

"Circumstances surrounding giving of check by owner to contractors, and transfer thereof by latter to materialman, held, to bind latter to apply it for owner's benefit, irrespective of whether contractors at time of payment directed check's application."

The Supreme Court of Iowa, in Young v. Swan, 69 N. W. 566, 100 Iowa, 323, says:

"Where a wife furnishes the husband with money to buy lumber for her house, and he purchases the same with such money from the plaintiff, with whom he has a general account for lumber, without directing on whose account the amount paid should be applied, plaintiff cannot apply the amount on the husband's general account, in order to claim a mechanic's lien on the property of the wife." See Brinckerhoff v. Greennan, 85 Ill. App. 253; Saffer v. Lambert, 111 Ill. App. 410.

"Where a debtor makes payments on a running account* * * with funds impressed with an equity in favor of a third party, they will be applied so as to protect the interests of that party. Payment from the funds of one debtor cannot be applied on the debt of another, although a common representative has placed the transactions of both in a single account." Ganley v. City of Pipestone (Minn.) 191 N. W. 738; Hanson v. Cordana (Cal.) 31 Pac. 457; First Nat. Bank v. Rush (Tex. Civ. App.) 227 S. W. 378; Bowles v. Fraser (Wash.) 109 Pac. 812; Hughes & Co. v. Flint (Wash.) 112 Pac. 633.

The testimony as to whether this material was actually used on lot 3, block 1, is vague and indefinite, and highly unsatisfactory.

"To uphold a lien for material purchased for a building on the land of the owner, it must appear that it entered into the construction of the building and became a part of the realty." Unit Sash & Sales Co. v. Early et al. (Kan.) 232 Pac. 232.

Assuming, but not conceding, that there was sufficient competent evidence on the part of the plaintiff that the materials furnished O. Kubatzky were actually used in the construction of the building on the Tulsa Realty Investment Company's lands, we are of the opinion, from an examination of the record, the plaintiff was sufficiently advised of the equities of the Tulsa Realty Investment Company to require it to apply the check to the payment of its claim against lot 3, block 1, and the court materially erred in rendering judgment for plaintiff, and establishing a lien upon said lot and block.

This action is for $248.60, and plaintiff's agent, in reply to a question propounded by the court, said:

"Exhibit No. 1, This is an order covering material for which we have brought suit and filed a lien."

By reference to plaintiff's Exhibit No. 1, we find it is for the sum of $248.60 for material on the job "owned by Mr. Kubatzky," and witness further testifies he does not know that any of this material went into the job on lot No. 3, and we are of opinion the trial court materially erred in overruling the defendants' demurrer to the plaintiff's evidence.

It further appears from the record that O. Kubatzky and Mr. Schwan, the Tulsa agent of the plaintiff, met at Kubatzky's office, with all their accounts before them, and spent several hours in going over the accounts and adjusting freight rates paid by the parties, and allowances for drayage, and arrived at a settlement, and in addition to the check of the Tulsa Realty Investment Company, there was delivered to the agent of plaintiff the check of Mrs. Lorina Kubatzky, the owner of lots 1 and 2, block 1, "15th & Peoria," made direct to the Pittsburgh Glass Company (this plaintiff), for the principal sum of $462.85, and having the following notation:

"For glass and glazing stores 15th and Peoria, in full."

Both of the checks received by plaintiff bore a date long subsequent to the furnishing of the material.

At the time of the delivery of the checks to, and an acceptance by, plaintiff, Kubatzky received from plaintiff a receipt in the following words:

"Received payment in full for store buildings, glass, and glazing at 15th and Peoria, according to contract. Pittsgurgh Plate Glass Co. By A. E. Schwan."

After plaintiff accepted the checks, and while they were in the hands of the plain-

tiff, and unknown to Kubatzky and without his knowledge or consent, this notation: "For glass and glazing stores 15th and Peoria in full," was crossed out by hatched ink marks, and the presumption arises that the obliteration of this notation was accomplished by the plaintiff, or its agents, as the uncontroverted testimony is that Kubatzky never knew of the alteration until the canceled check was returned from the bank, plaintiff having received payment thereon, and never knew of plaintiff's claim until served with summons in this action.

We are not unmindful of the fact that this court has held in Columbian Nat. Life Ins. Co. v. Wirthle, 73 Okla. 302, 176 Pac. 406, that:

"Receipts are prima facie evidence but not conclusive evidence of the payment of money indicated therein, and are always open to explanation, and the party alleged to have executed it may show its allegations to be false, or that it was executed and delivered by mistake or fraud."

An examination of the pleadings fails to disclose any allegation of mistake or fraud, and the evidence fails to disclose any suggestion of the same, and while plaintiff's agent admits he had the conference with Kubatzky, he denies there was any conversation between them, but does not deny the photostatic copy of the paper upon which the settlement was figured out and arrived at is in the handwriting of plaintiff's agent, and this court has held in Davis, Federal Agt., v. Davis et al., 103 Okla. 83, 229 Pac. 479:

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed in satisfaction operates as an accord and satisfaction, as the rule that receipt of a part of the debt due, under an agreement same shall be in full satisfaction, is not a bar to any action to recover the balance, does not apply where the plaintiff's claim is disputed or unliquidated, and the fact that the creditor was not bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to recover and would have recovered had be brought action, does not in any way affect the rule." See 1 Cyc. 332; Winter Cigar Co. v. Berman (Colo.) 186 Pac. 285.

Under the state of the record, we think the court erred in rendering judgment for the plaintiff against O. Kubatzky for the sum of $248.60, for any balance due for material furnished to lots 1 and 2 or lot 3, block 1, Broadmoor Heights addition.

The trial court further erred in rendering judgment for interest at the rate of 10 per cent. per annum.

Section 2, art. 14, of the Constitution of Oklahoma provides:

"The legal rate of interest shall not exceed six per centum per annum in the absence of any contract as to the rate of interest."

This action was on an open account, and there is no suggestion in the record that there was an agreement for a higher rate of interest, and section 5105, C. O. S. 1921, provides:

"All judgments of courts of record and justices of the peace shall bear interest from the date on which they are rendered at the rate of six per cent. per annum."

While under the pleadings the court might have rendered judgment for interest from the date the account was due, had the evidence and the law sustained such finding, the court was without authority to set such rate of interest above six per centum per annum.

The court further rendered judgment in favor of the plaintiff for $50 attorney's fees. There was no contract for attorney's fees, and no evidence was introduced tending to show the value of the services rendered by the attorney. and in Holland Banking Co. v. Dicks, 67 Okla. 228, 170 Pac. 253, wherein the amount of the attorney's fees was not stipulated, this court said:

"The trial court is without authority to award such attorneys' fee without evidence as to the value of such attorneys' fee."

For the errors herein appearing, the judgment of the trial court is reversed, with directions to the trial court to vacate the judgment rendered in favor of the plaintiff, and to render judgment in favor of the defendants.

By the Court: It is so ordered.

Note.—See under (1) 40 C. J. p. 457, § 644. (2) 40 C. J. p. 343, § 461. (3) 1 C. J. pp. 552, 553, § 71; 1 R. C. L. p. 194; 1 R. C. L.Supp. p. 60; 4 R. C. L. Supp. p. 10; 5 R. C. L. Supp. p. 7.