## AVIS, Adm'r, v. HOPPING.

No. 28332.   Feb. 14, 1939.

Rehearing Denied March 21, 1939.

Application for Leave to File Second Petition for Rehearing Denied April 4, 1939.

Pratt, Honnold & Swindell, for plaintiff in error.

Newton & Pinson and Watts & Watts, for defendant in error.

OSBORN, J.  This action was brought in the district court of Wagoner county by Paul Avis, as administrator of the estate of O. S. Hopping, deceased, against Susie Hopping, surviving spouse of said O. S. Hopping, to set aside and cancel a warranty deed executed by the deceased approximately four years before his death conveying to the said Susie Hopping two tracts of land in Wagoner county, which are referred to herein as the Childers' farm and the Simon's farm. The plaintiff alleged this conveyance was without fair and valuable consideration and therefore void as to those persons to whom said O. S. Hopping was under a legal liability at the time of executing said conveyance under the provisions of section 9697, O. S. 1931, post. The trial court rendered judgment in favor of the defendant, Susie Hopping, and the plaintiff appeals to this court. We

shall refer to the parties as they appeared in the trial court.

On June 21, 1927, O. S. Hopping, as surety, joined in the execution of a bond for C. R. Hunter, as executor of the estate of H. E. Brooks, deceased. At that time the legal title to the realty involved herein was in the name of O. S. Hopping, but no property was scheduled on the bond. December 12, 1930, O. S. Hopping executed the conveyance in question, and on June 27, 1932, Ethel Brooks Shaw, as heir of the deceased H. E. Brooks, filed an application in the county court of Tulsa county, in which court the probate proceedings were pending, praying that said C. R. Hunter be removed as executor of the estate, alleging certain misconduct on his part. July 12, 1932, the county court removed said executor, and in the order, made October 3, 1933, settling the final account of C. R. Hunter as executor found that he was heavily indebted to the estate. Thereafter Ethel Brooks Shaw filed suit in the United States District Court against the executor and his sureties, including O. S. Hopping, on the executor's bond, and recovered judgment against them on June 26, 1936. O. S. Hopping had died on December 6, 1934, and the plaintiff herein, as administrator of his estate, had been substituted as party defendant.

The plaintiff filed this suit on December 10, 1936, and alleged that the assets of the estate were wholly insufficient to satisfy the liability of said O. S. Hopping on the aforesaid bond as determined by the judgment rendered in the United States District Court in favor of said Ethel Brooks Shaw. The plaintiff further stated in his petition that this action was brought for the benefit of Ethel Brooks Shaw and prayed that said Ethel Brooks Shaw be decreed to have a claim or lien upon the realty involved herein superior and prior to the claims of other creditors, if any, of the estate of said O. S. Hopping. Because of the opinion hereinafter expressed, it is unnecessary that we determine whether said judgment creditor, Ethel Brooks Shaw, had such a superior and prior claim or lien upon the property or whether the plaintiff herein as administrator of the estate could assert such a claim in behalf and for the benefit of one creditor to the exclusion of others.

The plaintiff relies upon section 9697, O. S. 1931 (24 Okla. Stat. Ann. sec. 10), which provides:

"Every conveyance of real estate, or **any** interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability"

The plaintiff pleaded and sought to prove that the deceased, O. S. Hopping, conveyed the property in question to the defendant as a gift, and consequently void under the foregoing statute, irrespective of fraudulent intent, as against all persons to whom said grantor was at the time under any legal liability. First National Bank of Barnsdall v. Little, 122 Okla. 37, 250 P. 799. The defendant contended that the property was conveyed to her in payment of a pre-existing debt owed to her by her husband.

We shall consider the plaintiff's assignments of error in conjunction with a review of the evidence. In support of the contention that the conveyance was without fair and valuable consideration, the plaintiff introduced in evidence a transcript of the testimony given by the defendant at a hearing before the county court of Tulsa county on citation to disclose assets of the estate of said O. S. Hopping, deceased. At this hearing, which was held on December 9, 1936, the day before the case at bar was filed, the defendant testified that there was no consideration given for the deed except love and affection. Replying to several questions, the defendant stated that the deed was a gift by her husband. This was the only evidence the plaintiff introduced to prove lack of fair and valuable consideration except the deed itself. The consideration set forth there was "the sum of One Dollar and other good and valuable consideration ($1.00 etc.)". It is upon this evidence the plaintiff's case must stand.

The first witness for the defendant was W. S. Duggins, execution deputy in the sheriff's office of Tulsa county, who witnessed O. S. Hopping's signature to the deed herein. Mr. Duggins testified that Hopping stated at the time he executed this deed, in favor of his wife, the defendant, that he was doing this because of his health and because "he wanted to get his business straightened around and reimburse his wife the money he had used of hers."

The plaintiff contends that this declaration by O. S. Hopping was inadmissible, and relies upon the statement in 1 Ruling Case Law, at page 501, section 42, as his authority. Under the circumstances in the case at bar the trial court did not err in

admitting this statement in evidence. The rule as stated in the above authority upon which the plaintiff relies is as follows:

"To render an entry or declaration of a person since deceased admissible, it must appear to have been made without any interest or motive to falsify the fact, and of this the court should be satisfied; though absence of motive usually appears from the fact that the declaration was made ante litem motam or at a period so remote as to preclude any suspicion that it was manufactured."

There was no evidence that O. S. Hopping had reason to believe or knew that he would become liable upon the executor's bond in the Brooks estate at some indefinite date in the future. All evidence herein is to the contrary.

Susie Hopping, the defendant, who is 72 years old, testified that she had advanced her husband, O. S. Hopping, the money with which to purchase this real property and he executed this deed to reimburse her for that money. According to the defendant the money advanced was from her separate funds. Defendant stated she had inherited part of this money from her father and the balance she had accumulated through her individual efforts. Such a bona fide debt owing a wife by her husband is good and sufficient consideration for a conveyance or transfer by the husband of his real property, either in payment or as security for such debt. Swan v. Bailey, 71 Okla. 30, 174 P. 1065.

The defendant explained her previous statements made at the probate hearing that the deed to this realty was a gift from her husband by saying that the land had always been hers, and that the deed itself was a gift, since she did not give anything for it at the time her husband delivered it to her. When asked, on cross-examination, why she did not mention that she had advanced her deceased husband this money when testifying at the probate hearing, the defendant replied that no one asked her about it, but had only asked about and referred to the deed.

The defendant further stated that the reason her husband conveyed this property to her at that time was because his health was very bad, and, since one of their sons was incurably insane and confined in an institution, he wanted to reimburse her for the money advanced without risking possible litigation in the event he should die possessed of the legal title to the property which had been purchased with her money.

The plaintiff objected to the defendant's testimony upon several grounds. The first reason was that permitting the defendant to testify as to conversations and transactions with her deceased husband in this action was contrary to section 271, O. S. 1931 (12 Okla. Stat. Ann. sec. 384), which provides:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, * * * where such party has acquired title to the cause of action immediately from such deceased person."

It is sufficient to state that the plaintiff waived his right to object to the defendant so testifying by introducing the transcript of the defendant's testimony at the probate hearing regarding these same conversations and transactions. Likewise, by eliciting additional information thereon upon cross-examination, plaintiff waived any error on the part of the trial court in permitting the defendant to testify to these conversations and transactions in her testimony in chief. Cox v. Gettys, 53 Okla. 58, 156 P. 892; Secrest v. Nobles, 97 Okla. 277, 223 P. 863; In re Dearborn's Estate, McCreath v. Dearborn, 151 Okla. 58, 2 P.2d 93.

The plaintiff also maintains that the trial court erred in permitting the defendant to testify that the conveyance herein was made for a fair and valuable consideration, contradicting her prior statements at the hearing in the county court of Tulsa county. The plaintiff argues that the defendant was estopped from either contradicting or explaining the statement that the deed was a gift. The trial court did not err in admitting such testimony explaining or contradicting the prior statement. The general rule is expressed in 22 C. J. p. 423, sec. 506, as follows:

"A party to an action is not concluded by an admission made by him or by one whose admissions affect him, in the course of another action, but such admission may be explained or contradicted."

This rule has been adopted in substance by this court. Limerick v. Lee, 17 Okla. 165, 87 P. 859; Letcher v. Maloney, 70 Okla. 65, 172 P. 972; Chicago, R. I. & P. Ry. Co. v. Mashore, 21 Okla. 275, 96 P. 630; Continental Oil Co. v. Logan, 177 Okla. 273, 58 P.2d 554.

The plaintiff further contends that "the defendant is estopped to claim ownership

in herself for the time the record title stood in her husband." This is a restatement of the proposition involved in the case of Terrell v. Wheeler-Motter Mercantile Co., 147 Okla. 77, 294 P. 644, upon which the plaintiff relies. A different situation existed in that case. There the legal title to the property in question had been in the name of the husband, although it belonged to his wife, and while in his name the husband had listed it among his assets in a financial statement submitted to the mercantile company when he sought credit with them. It was undisputed that the company relied upon that financial statement and upon this particular property, since without it the financial statement revealed the husband to be insolvent. This court held that after the husband had obtained credit upon the strength of that representation, the wife was estopped from asserting her equitable title and defeating the claim of the creditor who had relied thereon. In the instant case the plaintiff sought to bring himself within that rule by alleging that when Hopping became surety on the bond "Ethel Brooks Shaw investigated the financial resources and standing of the said O. S. Hopping and ascertained that he then owned the said real estate hereinafter described (the realty in question herein) and relied thereon." But Ethel Brooks Shaw did not testify in the case and there is no other evidence sustaining this allegation. An examination of the executed bond reveals that no specific property was scheduled thereon. Consequently, this assignment of error is without merit.

The other witnesses for the defendant were her daughters, Pearl Hopping and Mrs. Jessie Knupp. Pearl Hopping testified that she was present and saw her mother give the money to her father with which to purchase both the Childers' farm and the Simon's farm, which was the property conveyed by the conveyance in question. She further stated that she was 20 years old when her parents moved to what is now Oklahoma in 1905, and, being associated with her father in the bank at Coweta soon thereafter, had personal knowledge regarding the financial affairs of both parents. She corroborated the defendant's testimony that this money was from the defendant's separate and individual funds, and also confirmed the testimony of both the defendant and W. S. Duggins as to the statements made by her father as to his reasons for conveying this property to the defendant.

Mrs. Jessie Knupp testified that she was present and saw her mother give her father the money with which to purchase the Simon's farm, but was not present when she gave him the money to buy the Childers' farm.

Under the evidence as stated above, we cannot say that the judgment of the trial court in favor of the defendant was against the clear weight of the evidence, and judgment of the trial court is, therefore, affirmed.

BAYLESS, C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.